# UNITED STATES DISTRICT COURT

for the

Eastern District of California

**FILED**

JUN 2 9 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
            DEPUTY CLERK

|  |  |
|---|---|
| In the Matter of the Search of | ) |
| INFORMATION ASSOCIATED WITH JSTYUNG21@YAHOO.COM THAT IS STORED AT PREMISES CONTROLLED BY OATH HOLDINGS INC. | ) ) ) ) ) ) |

Case No. **2: 1 8 - SW - 0 5 4 3    KJN**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____ Eastern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2252(a)(2); 2252 (a)(4)(b); 2251(a) & (e) | Possession of Child Pornography; Receipt of Child Pornography; Production & Attempted Production of Child Pornography |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☐ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Scott A. H. Schofield, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 25, 2018

_____
*Judge's signature*

City and state: Sacramento, California

Kendall J. Newman, U.S. Magistrate Judge
*Printed name and title*

1   McGREGOR W. SCOTT
    United States Attorney
2   ANDRE M. ESPINOSA
    Assistant United States Attorney
3   501 I Street, Suite 10-100
    Sacramento, CA 95814
4   Telephone: (916) 554-2700
    Facsimile:  (916) 554-2900
5

6

7   Attorneys for Plaintiff
    United States of America
8

9              IN THE UNITED STATES DISTRICT COURT

10              EASTERN DISTRICT OF CALIFORNIA

11

12   In the Matter of the Search of:          CASE NO.

13   INFORMATION ASSOCIATED WITH          AFFIDAVIT IN SUPPORT OF AN APPLICATION
     YAHOO! ACCOUNT:                       FOR A SEARCH WARRANT
14   JSTYUNG21@YAHOO.COM THAT IS
     STORED AT PREMISES CONTROLLED BY      **FILED UNDER SEAL**
15   OATH HOLDINGS INC.

16

17         I, Scott A. H. Schofield, being first duly sworn, hereby depose and state as follows:

18                **I.    INTRODUCTION AND AGENT BACKGROUND**

19         1.     I make this affidavit in support of an application for a search warrant for information

20   associated with a certain account that is stored at premises controlled by OATH HOLDINGS INC., a

21   social network company headquartered at 701 First Avenue, Sunnyvale, California, 94089.  The

22   information to be searched is described in the following paragraphs and in Attachment A, hereby

23   incorporated by reference.  This affidavit is made in support of an application for a search warrant under

24   18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require OATH HOLDINGS INC. to disclose

25   to the government copies of the information (including the content of communications) further described

26   in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B

27   (hereby incorporated by reference), government-authorized persons will review that information to

28   locate the items described in Section II of Attachment B.

AFFIDAVIT                                      1

1.      I have been employed as a Special Agent of FBI since 2004, and am currently assigned to the Violent Crimes Against Children Squad in the Sacramento Division.  While employed by the FBI, I have investigated federal criminal violations related to white collar crime, child exploitation, and child pornography.  I have received training in the area of identifying and investigating child pornography and child exploitation crimes, and as part of my duties have observed and reviewed numerous examples of child pornography in all forms of media, including computer media.  In the course of my employment, I have participated in many search warrants in connection with child exploitation matters and other violations involving businesses and residences.  Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2251, 2251A, 2252, 2252A, and 2422(b), and I am authorized by the Attorney General to request a search warrant.

2.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 2251 (Production and Attempted Production of Child Pornography), 2252(a)(2) (Receipt of Child Pornography), 2252(a)(4)(b) (Possession of Child Pornography), and 2422(b)(Enticement of a Minor), have been committed by JOSHUA SZLACHCIUK ("SZLACHCIUK").  There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachment B.

## II.      JURISDICTION

4.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## III.      PROBABLE CAUSE

5.      The following facts concerning the initiation of this investigation were related to me by Placer County Sheriff's Detectives Steve Slattery and Bryan Mattison:

a)      In 2016, the Placer County Sheriff's Office conducted an investigation related to distribution of marijuana.  That investigation identified two subjects, including JOSHUA SZLACHCIUK, a resident of Lincoln, California, and the owner/operator of a martial arts dojo.  Further investigation suggested SZLACHCIUK and his accomplice were distributing marijuana around the United States via the mails.

b)      A State of California search warrant, authored by Detective Slattery, was executed at SZLACHCIUK's residence on September 26, 2016.  At the time, SZLACHCIUK shared that residence with a non-relative housemate, who occupied a separate bedroom in the residence.  During execution of the warrant, law enforcement officers seized CELLULAR TELEPHONE 1 from a nightstand in SZLACHCIUK's bedroom.  Law enforcement officers also seized a different cellular telephone from the bedroom of the other occupant of the residence.  Additionally, assault weapons were located in the residence.

c)      The State warrant for CELLULAR TELEPHONE 1 limited the permissible search period to January 1, 2016, through September 27, 2016.  Thus, a forensically trained detective created a full forensic copy of the data on CELLULAR TELEPHONE 1, and filtered that data to provide Detective Slattery with only data within the permitted timeframe.  While Detective Slattery reviewed the data, he noticed the presence of pornographic images.  However, he was primarily trying to locate evidence of drug and weapons charges and ignored the pornography.

d)      The Placer County District Attorney's Office charged SZLACHCIUK and his accomplice with drug and weapons crimes.  After a preliminary hearing, that case was set for jury trial in November 2017.

e)      As part of preparation for that trial, Deputy District Attorney ("DDA") Ray DeJesus reviewed the date-filtered copy of the data from CELLULAR TELEPHONE 1 that Detective Slattery had reviewed.  DDA DeJesus hoped to find in the data indicia of ownership of CELLULAR TELEPHONE 1, which the original State search warrant authorized.

f)      When DDA DeJesus opened the electronic report of the forensic copy from CELLULAR TELEPHONE 1, his computer screen filled with thumbnail images.  DDA DeJesus immediately observed that some of the images in plain view on his screen were pornographic and, in

1    some cases, the female depicted in the images appeared under the age of 18 years of age.  One image

2    depicted what appeared to be a minor girl orally copulating an apparent adult male.  DDA DeJesus also

3    observed pictures of this same girl in a martial arts uniform standing next to SZLACHCIUK, suggesting

4    she may be a student at SZLACHCIUK's martial arts dojo.

      6.    After seeing these images in plain view, DDA DeJesus contacted the investigating

6    detectives who traveled to his office a few days later and viewed the images DDA DeJesus found.  Upon

7    viewing the images, the detectives agreed that the girl ("Victim 1") appeared underage and they began

8    efforts to locate her as quickly as possible, given that SZLACHCIUK was not in custody and it appeared

9    he may have regular contact with Victim 1.

      7.    The investigators did not seek a rollover warrant to search CELLULAR TELEPHONE 1

11    for additional child pornography and/or molestation evidence.  CELLULAR TELEPHONE 1 remained

12    in the custody of the Placer County Sheriff's Office at that time.

      8.    Based on the foregoing, on April 20, 2018, I sought a federal search warrant to search the

14    contents of CELLULAR TELEPHONE 1.  That warrant was signed by the Honorable Edmund F.

15    Brennan (case 2:18-SW-388 EFB).  In addition to the above, which I asserted to the Court supported a

16    finding of probable to search CELLULAR TELEPHONE 1, I disclosed the following additional facts

17    concerning further investigative efforts by Placer County Sheriff's detectives to identify Victim 1 and to

18    identify the adult male depicted in the suspected images of child sexual exploitation discovered by DDA

19    DeJesus.  I offered those additional facts to satisfy my duty of candor to the Court and not to influence

20    the Court's probable cause determination.  Indeed, I specifically requested that the Court not to consider

21    those additional facts in making its determination of whether probable cause exists to search

22    CELLULAR TELEPHONE 1.

      9.    Detectives examined the images DDA DeJesus discovered on CELLULAR

24    TELEPHONE 1 more closely and observed that in a picture of SZLACHCIUK and Victim 1, Victim 1's

25    name was visible on her martial arts uniform.  Detectives searched public records and were able to

26    locate information about Victim 1.  They then asked Detective C. Joyce to examine the phone

27    forensically to attempt to find additional information about Victim 1.

      10.    Detective Joyce examined the contents of CELLULAR TELEPHONE 1 and located the

following:

    a)    Images of Victim 1 in various stages of undress.

    b)    Images depicting Victim 1's genitals and anus.

    c)    Images depicting Victim 1's anus with various items inserted into her anus.

    d)    At least one image depicting Victim 1 performing oral sex on SZLACHCIUK.

    e)    At least one video depicting Victim 1 removing her underwear, then removing an object from her anus and putting on different underwear.

    f)    A video appearing to show Victim 1 performing oral sex on an adult male. At one point in the video, the male dropped the camera and his tattooed leg was visible. The tattoo matched a tattoo on SZLACHCIUK's leg.

11.    Many of the above files did not have date or time data attached because they appeared to have been downloaded to CELLULAR TELEPHONE 1 from the Kik chatting application. However, the video showing Victim 1 performing oral sex on SZLACHCIUK showed a modified date of August 18, 2016.

    a)    The date information mentioned above is assigned by and is dependent upon, the time and date as set on CELLULAR TELEPHONE 1. Thus, this date and time is only accurate if the date and time is set accurately on the device. Based on my training and experience, I know that the date and time setting on cellular telephones are almost always accurate because it is set automatically, taking this data from the network to which the phone is attached. This is not, however, always true of every cell phone. That said, as detailed below, Victim 1 was a minor at the time she was contacted by Placer County Sheriff's Detectives, and thus it can be determined that she was a minor when the video mentioned above was captured.

12.    Detectives searched Facebook and determined that Victim 1 attended a high school in the area. Detectives contacted Victim 1 and learned that she was a minor as of the time of the interview (October 2017). Based upon her date of birth and the date information associated with the video on CELLULAR TELEPHONE 1, Detectives determined that Victim 1 was approximately 16 years old when the video was made. Victim 1 provided the following information, in part:

13.    At the time of the interview, Victim 1 was 17 years of age and a senior in high school.

1   She had a sexual relationship with SZLACHCIUK.  The relationship ended approximately one year

2   before the interview.  She confirmed SZLACHCIUK knew her age and acknowledged she was aware

3   that SZLACHCIUK had captured pictures and/or videos of the two of them engaged in sexual acts.  She

4   also confirmed she sent nude photographs to SZLACHCIUK, at his request.  She sent those images via

5   the Kik messaging application.  When asked about the video of Victim 1 performing oral sex on

6   SZLACHCIUK, and whether that had taken place at SZLACHCIUK's martial arts dojo, Victim 1

7   nodded her head and said "probably."  Victim 1 was aware that SZLACHCIUK was making the video,

8   but did not know why.

9        14.     After the interview, law enforcement agents located SZLACHCIUK and took him into

10  custody.

11       15.     As set forth above, on April 20, 2018, I obtained a federal search warrant to search the

12  contents of CELLULAR TELEPHONE 1.  Pursuant to that warrant, I examined the contents of

13  CELLULAR TELEPHONE 1 and observed the following, in part:

14            a)      Several email accounts were associated with CELLULAR TELEPHONE 1,

15  including JSTYUNG21@YAHOO.COM, the SUBJECT ACCOUNT.  Based upon my training and

16  experience, the presence of "yung" in the username indicates the account is likely used for sexual

17  purposes involving children.  In my experience, the term "yung" refers to the word "young" but spelled

18  in a way that will evade automated spellcheck programs from identifying the word as "young."  I have

19  seen the term "yung" used in many investigations I have conducted relating to child pornography and

20  enticement of minors.

21            b)      Many Craigslist ads were accessed by CELLULAR TELEPHONE 1, including

22  one titled "young boy sucking any cock discretly [sic] all morning."

23            c)      Many text messages between SZLACHCIUK and Victim 1 that were sexual in

24  nature including SZLACHCIUK stating that he wanted to "take [Victim 1] roughly and aggressively

25  almost pushing the boundary of rp [role playing] to reality" and asking "does it matter which hole?  Or

26  how I get what I want?"  SZLACHCIUK also discussed inserting an anal "plug" with Victim 1.

27            d)      Sexually explicit images of Victim 1 taken while she was a minor, including all of

28  those listed above in Paragraph 10.

1        e)     A 36-second color video depicting Victim 1 performing oral sex on

2 SZLACHCIUK.  This is the same video observed by Placer County Detectives, as described above in

3 Paragraph 10.

4        16.    Based on my training and experience in child pornography investigations, I am aware that

5 it is common for the subjects of the investigations to establish separate email and other online accounts

6 to conduct their illicit activity and those accounts have often had sexually explicit usernames.  Based

7 upon the presence of child pornography and sexually explicit text messages with a minor on

8 CELLULAR TELEPHONE 1, which the evidence demonstrates belongs to SZLACHCIUK, and the

9 sexual nature of the username of the SUBJECT ACCOUNT, I believe there is probable cause that

10 SZLACHCIUK utilized the SUBJECT ACCOUNT to store images of child pornography and/or to

11 communicate with other minors and/or other collectors of child pornography to obtain images of child

12 pornography.

13     **IV.**     **BACKGROUND CONCERNING YAHOO! (OATH HOLDINGS, INC)**

14        14.    Based on my training and experience, and publicly available information, I have learned

15 that Yahoo! Inc. provides a variety of on-line services, including e-mail access, to the general public.

16 Yahoo! Inc., now owned by Oath Holdings, Inc., allows subscribers to obtain email accounts at the

17 domain name yahoo.com, like the email account listed in Attachment A.  Subscribers obtain a Yahoo!

18 email account by registering with Yahoo! Inc.  During the registration process, Yahoo! Inc. asks

19 subscribers to provide basic personal information.  Therefore, the computers of Yahoo! Inc. are likely to

20 contain stored electronic communications (including retrieved and unretrieved e-mail for Yahoo! Inc.

21 subscribers) and information concerning subscribers and their use of Yahoo! Inc. services, such as

22 account access information, e-mail transaction information, and account application information.

23

24        15.    In general, an e-mail that is sent to a Yahoo! Inc. subscriber is stored in the subscriber's

25 "mail box" on Yahoo! Inc. servers until the subscriber deletes the e-mail.  If the subscriber does not

26 delete the message, the message can remain on Yahoo! Inc.'s servers indefinitely.  The user can move

27 and store messages in personal folders such as a "sent folder."  In recent years, Yahoo! Inc., and other

28

ISPs have provided their users with larger storage capabilities associated with the user's e-mail account. Yahoo! Inc., and other ISPs have allowed users to store up to one (1) terabyte of information associated with the account on ISP servers. Based on conversations with other law enforcement officers with experience in executing and reviewing search warrants of e-mail accounts, I have learned that search warrants for e-mail accounts and computer systems have revealed stored e-mails sent and/or received many years prior to the date of the search.

16.    When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to Yahoo! Inc.'s servers, and then transmitted to its end destination. Yahoo! Inc. typically saves a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the Yahoo! Inc. server, the e-mail can remain on the system indefinitely.

17.    A sent or received e-mail typically includes the content of the message (including attachments), source and destination addresses, the date and time at which the e-mail was sent, and the size and length of the e-mail. If an e-mail user writes a draft message but does not send it, that message may also be saved by Yahoo! Inc. but may not include all of these categories of data.

18.    A Yahoo! Inc. subscriber can also store files, including e-mails, address books, contact or buddy lists, calendar data, pictures, and other files, on servers maintained and/or owned by Yahoo! Inc. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

19.    Many subscribers to Yahoo! Inc. do not store copies of the e-mails stored in their Yahoo! Inc. account on their home computers. This is particularly true because they access their Yahoo! Inc. account through the Internet, and thus it is not necessary to copy e-mails to a home computer to use the service. Moreover, an individual may not wish to maintain particular e-mails or files in their residence to ensure others with access to the computer cannot access the e-mails.

20.     In my training and experience, generally, e-mail providers like Yahoo! Inc. ask each of their subscribers to provide certain personal identifying information when registering for an e-mail account.  This information can include the subscriber's full name, physical address, telephone numbers (usually a mobile number) and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit card or bank account number).  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.  Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provide clues to their identity, location or illicit activities.

21.     The mobile number and alternate e-mail information provided to Yahoo! Inc., by the user are particularly useful in instances where a user needs to recover his/her account in the event of a lost password or account compromise.  With these, Yahoo! Inc. can send a "reset password" link to the alternate e-mail address, or an SMS message to the mobile number.  Upon receiving the "reset password" link to an SMS mobile number affiliated with that account, the user can then reset the password in order to continue to utilize that particular account.  Because both a mobile device number and alternate e-mail address are used to recover access to an account, they both tend to be closely associated with the user of the account.  It is important to note that though Yahoo! attempts to validate the personal identifying information provided by subscribers, the validation requires additional voluntary input from users.  As this additional input is voluntary, Yahoo! is not always successful in validating a user's personal identifying information.

22.     When creating an account at Yahoo! Inc., the user is provided the opportunity to create a display name and an associated "Profile."  Yahoo! Inc. allows a user to personalize their Profile by "adding an image that represents you."  The display name and display image a user provides for their Profile is public and can be seen by anyone, even if the user chooses to keep the rest of their Profile

1  hidden from other users.

2      23.    In my training and experience, e-mail providers typically retain certain transactional

3  information about the creation and use of each account on their systems.  This information can include

4  the date on which the account was created, the length of service, records of log-in (i.e., session) times

5  and durations, the types of service utilized, the status of the account (including whether the account is

6  inactive or closed), the methods used to connect to the account (such as logging into the account via

7  Yahoo! Inc.'s website), and other log files that reflect usage of the account.  In addition, e-mail

8  providers often have records of the IP address used to register the account and the IP addresses

9  associated with particular logins to the account.  Because every device that connects to the Internet must

10  use an IP address, IP address information can help to identify which computers or other devices were

11  used to access the e-mail account.

12      24.    In my training and experience, in some cases, e-mail account users will communicate

13  directly with an e-mail service provider about issues relating to the account, such as technical problems,

14  billing inquiries, or complaints from other users.  E-mail providers typically retain records about such

15  communications, including records of contacts between the user and the provider's support services, as

16  well records of any actions taken by the provider or user as a result of the communications.  In my

17  training and experience, such information may constitute evidence of the crimes under investigation

18  because the information can be used to identify the account's user or users.

19      25.    In my training and experience, e-mail users often use e-mail accounts for everyday

20  transactions because it is fast, low cost, and simple to use.  People use e-mail to communicate with

21  friends and family, manage accounts, pay bills, and conduct other online business.  E-mail users often

22  keep records of these transactions in their e-mail accounts, to include personal identifying information

23  such as name and address.

26.     In my training and experience, evidence of who was using an e-mail account may be found in address books, contact or buddy lists, e-mail in the account, and attachments to e-mails, including pictures and files.

27.     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time.  Further, information maintained by the email provider can show how and when the account was accessed or used.  For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner.  Additionally, information stored in the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email).  Lastly, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation.  For example, information in the email account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

**Yahoo! Messenger**

28.    In my training and experience, I have also learned that Yahoo! Inc. provides an on-line service called Yahoo! Messenger to the general public.  Yahoo! Messenger is an instant messaging client provided by Yahoo!.  Instant Messaging ("IM") is a form of real-time direct text-based communication between two or more people using shared clients. The text is conveyed via devices connected over a network such as the Internet.  In addition to text, Yahoo's software allows users with the most current updated versions to utilize its webcam service.  This option enables users from distances all over the world to view others who have installed a webcam on their end.

29.    In order to obtain a Yahoo! Messenger account, a Yahoo! email account is required.  The Yahoo! email user must download the Yahoo! Messenger program and sign in with the same credentials used for his/her Yahoo! email account.  Therefore the user is issued the same Yahoo! ID for the messenger program and the email account.

30.    The Terms of Service for a Yahoo! Messenger account state that a user's Yahoo! Messenger account is tied to that same user's Yahoo! email account.  The Terms of Service also notify the user that Yahoo! Messenger will allow the user and the people the user communicates with to save those conversations and other information into the user's affiliated Yahoo! email account.  Yahoo! Messenger also allows users to exchange computer to computer voice calls with their online contacts.  If a user subscribes to the "Phone In" or "Phone Out" premium services, the user can also use Yahoo! Messenger to make or receive calls from regular telephones.

31.    An individual must be a registered Yahoo! user in order to use Yahoo! Messenger. Yahoo! Messenger establishes a connection to the Internet when it is active -- much like a browser does -- in order for communications to be received and transmitted.

32.    A user may archive Yahoo! instant messages along with Yahoo! email messages and search them together (in addition to Voice Mail, SMS, call history, and more).  For users that have

elected to archive their messages, Yahoo! Messenger will now archive messages on Yahoo! servers to establish and maintain this archive. Messages stored on Yahoo! servers in this manner are accessible from any computer system or device able to use the latest versions of Yahoo! Messenger for computer. Users can view their Yahoo! Messenger conversation history and Yahoo! email archive (if they are tied to the same user ID) on Yahoo! Messenger through "Conversation History" in the settings. A user can turn off this feature for instant messages at any time by selecting "Do not keep a record of my conversations." Even if a user chooses not to save his message history, users with whom he communicates may opt to use the functionality available in their version of Yahoo! Messenger to save the communications and his conversations may be saved on Yahoo! servers, just like e-mail. Users can delete their archived messages by selecting the message, and clicking on the "Delete" button. However, this does not delete any of their conversations saved by other users. Yahoo! may analyze instant messages that users elect to archive in order to provide personally relevant product features, content, and advertising, and spam and malware detection.

33.     In my training and experience, evidence of the true identity of the owner of an electronic account may be found in e-mail and/or instant messages, to include personal information, pictures, and residential or work place locations and addresses.

34.     Yahoo! also owns other affiliated services, such as Tumblr, a social network site, the Yahoo! search engine, and others.

## V.     CONCLUSION

17.     Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on OATH HOLDINGS INC. who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

///

///

Respectfully submitted,

Scott A. H. Schofield
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on:                        June 29, 2017

The Honorable Kendall J. Newman
UNITED STATES MAGISTRATE JUDGE

Approved as to form by AUSA ANDRE M. ESPINOSA

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the YAHOO! account JSTYUNG21@YAHOO.COM that is stored at premises controlled by OATH HOLDINGS INC., a company that accepts legal process via a law enforcement portal I have used and am familiar with.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by OATH HOLDINGS INC. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any emails, records, files, posts, messages, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on March 15, 2018 (request #1572948), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      The entire contents of the YAHOO! account and any information or data associated with the account, including stored or preserved copies of posts, photos, videos, messages and emails sent to and from the account, draft messages and emails, the source and destination accounts associated with each message and email, the date and time at which each message or email was sent, and all contents of these messages and emails;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, email and alternative email addresses provided during registration, methods of connecting, log files, and any means and source of payment (including any credit or bank account number) if provided;

c.      The types of services utilized;

AFFIDAVIT                                                        2

d.     All records or other information stored at any time by an individual using the account, including address books, contact and "friend" lists, calendar data, pictures, and files;

e.     All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

f.     Any and all search terms searched for using the Yahoo! Search Engine or any other Yahoo! service.

g.     All records and posts contained in a Tumblr account associated with the SUBJECT ACCOUNT, if any.

**II.     Information to be seized by the government**

All information described above in Section I that constitutes evidence, instrumentalities, contraband, or fruits of violations of 18 U.S.C. §§ 2251 (Production and Attempted Production of Child Pornography), 2252(a)(2) (Receipt of Child Pornography), 2252(a)(4)(b) (Possession of Child Pornography), and 2422(b)(Enticement of a Minor), occurring after February 10, 2010, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a)     Sexually explicit communication with, and receipt of sexually explicit images/videos from, minors

(b)     Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the YAHOO! account owner;

(c)     Evidence indicating the account owner's state of mind as it relates to the crime under investigation;

AFFIDAVIT                                                                 ⅜

1          (d)      The identity of the person(s) who created or used the user ID, including

2   records that help reveal the whereabouts of such person(s).

3          (e)      The identity of any person(s) who may have communicated with

4   SZLACHCIUK about matters relating to the production and/or receipt and/or possession of child

5   pornography or the enticement of minors, including records that help reveal their whereabouts.

27   AFFIDAVIT

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br><br>INFORMATION ASSOCIATED WITH<br>JSTYUNG21@YAHOO.COM THAT IS STORED AT<br>PREMISES CONTROLLED BY OATH HOLDINGS<br>INC. | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.  2:18-SW-0543  KJN

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before   July 9 2018   *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   June 29, 2018   11:30 A.M.

City and state:     Sacramento, California

_____
Judge's signature

Kendall J. Newman, U.S. Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

## Certification

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____          _____
Signature of Judge                                                Date

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the YAHOO! account JSTYUNG21@YAHOO.COM that is stored at premises controlled by OATH HOLDINGS INC., a company that accepts legal process via a law enforcement portal I have used and am familiar with.

1

**ATTACHMENT B**

2

**Particular Things to be Seized**

3

I.     **Information to be disclosed by OATH HOLDINGS INC. (the "Provider")**

4

To the extent that the information described in Attachment A is within the possession,

5

6

custody, or control of the Provider, including any emails, records, files, posts, messages, logs, or

7

information that has been deleted but is still available to the Provider, or has been preserved

8

pursuant to a request made under 18 U.S.C. § 2703(f) on March 15, 2018 (request #1572948),

9

the Provider is required to disclose the following information to the government for each account

10

or identifier listed in Attachment A:

11

a.     The entire contents of the YAHOO! account and any information or data

12

associated with the account, including stored or preserved copies of posts, photos, videos,

13

14

messages and emails sent to and from the account, draft messages and emails, the source and

15

destination accounts associated with each message and email, the date and time at which each

16

message or email was sent, and all contents of these messages and emails;

17

b.     All records or other information regarding the identification of the account, to

18

include full name, physical address, telephone numbers and other identifiers, records of session

19

times and durations, the date on which the account was created, the length of service, the IP

20

address used to register the account, log-in IP addresses associated with session times and dates,

21

account status, email and alternative email addresses provided during registration, methods of

22

connecting, log files, and any means and source of payment (including any credit or bank

23

24

account number) if provided;

25

c.     The types of services utilized;

26

27

AFFIDAVIT

28

d.    All records or other information stored at any time by an individual using the account, including address books, contact and "friend" lists, calendar data, pictures, and files;

e.    All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

f.    Any and all search terms searched for using the Yahoo! Search Engine or any other Yahoo! service.

g.    All records and posts contained in a Tumblr account associated with the SUBJECT ACCOUNT, if any.

**II.    Information to be seized by the government**

All information described above in Section I that constitutes evidence, instrumentalities, contraband, or fruits of violations of 18 U.S.C. §§ 2251 (Production and Attempted Production of Child Pornography), 2252(a)(2) (Receipt of Child Pornography), 2252(a)(4)(b) (Possession of Child Pornography), and 2422(b)(Enticement of a Minor), occurring after February 10, 2010, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a)    Sexually explicit communication with, and receipt of sexually explicit images/videos from, minors

(b)    Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the YAHOO! account owner;

(c)    Evidence indicating the account owner's state of mind as it relates to the crime under investigation;

AFFIDAVIT

1    (d)  The identity of the person(s) who created or used the user ID, including

2 records that help reveal the whereabouts of such person(s).

3    (e)  The identity of any person(s) who may have communicated with

4 SZLACHCIUK about matters relating to the production and/or receipt and/or possession of child

5 pornography or the enticement of minors, including records that help reveal their whereabouts.

AFFIDAVIT